## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SELECTIVE INSURANCE COMPANY OF
AMERICA,

          Plaintiff,

    v.

J. RECKNER ASSOCIATES, INC. D/B/A
RECKNER HEALTHCARE,

          Defendant.

Case No.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Selective Insurance Company of America ("SICA"), by and through the undersigned counsel, brings the following complaint for declaratory judgment against J. Reckner Associates, Inc. d/b/a Reckner Healthcare ("Reckner") seeking a declaration that SICA has no duty to defend or indemnify Reckner for the claims being made in a lawsuit filed in the United States District Court for the Eastern District of Michigan styled *Brian Lyngaas, D.D.S. v. J. Reckner Associates, Inc. d/b/a Reckner Healthcare*, Case No. 17-cv-12867 (the "Underlying Lawsuit"). SICA states the following in support of its claim:

## INTRODUCTION

1.    This action arises from claims in the Underlying Lawsuit, which allege violations of the Telephone Consumer Protection Act ("TCPA") and which alleged violations are excluded by the SICA policies of insurance at issue. A copy of the Complaint in the Underlying Lawsuit is attached hereto as **EXHIBIT 1**. A copy of the Order Denying Defendant's Motion for Judgment on the Pleadings in the Underlying Lawsuit is attached hereto as **EXHIBIT 2**.

## THE PARTIES

2.      At all relevant times, SICA was a foreign insurance company licensed to conduct the business of insurance in the State of Pennsylvania, but is incorporated and has its principal place of business in the State of New Jersey.

3.      At all relevant times, Reckner was a Pennsylvania corporation with its principal place of business in Chalfont, Pennsylvania.

4.      At all relevant times, the d/b/a "Reckner Healthcare" was a fictitious name owned by J. Reckner Associates, Inc., which was registered with the State of Pennsylvania.  "Reckner Healthcare" shares an address with J. Reckner Associates, Inc.

5.      "Reckner Healthcare" was created on March 30, 2015.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1332 and 2201.  This action involves a declaratory judgment between citizens of different states.  The Underlying Lawsuit is a class action complaint that seeks $500 per violation, treble statutory damages, punitive damages, and attorneys' fees, which, upon information and belief, will exceed $75,000.  If there is ever determined to be a duty to defend, defense costs for a class action will almost certainly exceed $75,000.  The relevant limits of insurance under SICA's policies, moreover, exceed $75,000 per policy period.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district in that the policies were issued and delivered to a Pennsylvania insured.

## FACTUAL BACKGROUND

8.      In the Underlying Lawsuit, Brian Lyngaas, D.D.S. ("Claimant") alleges that

2

Reckner has violated the TCPA and the Federal Communications Commission regulations associated therewith by sending unsolicited fax advertisements to Claimant and others. (Ex. 1 at ¶¶ 1–2, 26).

9.      The Underlying Lawsuit involves a proposed class action under the TCPA in Count I. The Underlying Lawsuit also brings a claim for Conversion (Count II).

10.     Claimant alleges that he received at least one fax from Reckner on January 5, 2017. (*Id.* at ¶ 15; Ex. 1-A).

11.     Claimant alleges that the faxes from Reckner do not include an opt-out notice that is compliant with the TCPA. (Ex. 1 at ¶ 25).

12.     Claimant purports that the allegedly unsolicited faxes interrupt the recipient's privacy. (*Id.* at ¶ 4).

13.     Claimant alleges damages because the allegedly unsolicited faxes from Reckner "tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to discern the source and purpose of the [fax]." (*Id.* at ¶¶ 4, 60, 62–63). Claimant also alleges the loss of paper and ink toner. (*Id.*).

14.     Claimant seeks punitive damages and attorneys' fees in connection with Count II.

15.     On July 31, 2018, the United States District Court for the Eastern District of Michigan held, in its Order denying Reckner's Motion for Judgment on the Pleadings, "The Court finds that the fax at issue is an advertisement[.]" (Ex. 2 at p. 1). The Court further stated:

> … [I]n order to be an 'advertisement' under the TCPA, the fax on its face must propose that the sender and the recipient enter into some kind of commercial relationship, whether that be buying or selling a good or a service. That is exactly what the fax in this case does. [Reckner] is announcing a desire to hire Plaintiff to take its survey, in exchange for $30. As a matter of law, that's an

3

advertisement.

(*Id.* at p. 10).

## THE SICA POLICIES

16.     SICA issued Policy No. S 1570712 for each of the following annual policy periods: September 17, 2014 to September 17, 2015 (the "2015 Policy"); September 17, 2015 to September 17, 2016 (the "2016 Policy") and September 17, 2016 to September 17, 2017 (the "2017 Policy"). A copy of the 2015 Policy is attached hereto as **EXHIBIT 3**. A copy of the 2016 Policy is attached hereto as **EXHIBIT 4**. A copy of the 2016 Policy is attached hereto as **EXHIBIT 5**.

17.     In the 2015 Policy, the Named Insureds included the following:  Reckner Associates, Inc. Institute for Sensory Research LLC; Mars Surveys, Inc.; J. Reckner Associates, Inc. t/a Reckner Holding Company; Reckner Associates; J. Reckner Associates Inc. d/b/a Blueberry; and J. Reckner Associates Inc. d/b/a Reckner.  (Ex. 3 at Form IL-7041 (08/94), Named Insured Extension Schedule).

18.     In the 2016 Policy, the Named Insureds included the following:  J. Reckner Associates, Inc.; J. Reckner Associates, Inc. d/b/a The Institute for Sensory Research LLC; Mars Surveys, Inc.; J. Reckner Associates, Inc. t/a Reckner Holding Company; Reckner Associates; J. Reckner Associates Inc. d/b/a Blueberry; J. Reckner Associates Inc. d/b/a Reckner; and J. Reckner Associates, Inc. d/b/a Reckner Health Care.  (Ex. 4 at Form IL-7041 (08/94), Named Insured Extension Schedule).

19.     In the 2017 Policy, the Named Insureds included the following:  J. Reckner Associates, Inc.; J. Reckner Associates, Inc. d/b/a The Institute for Sensory Research LLC; Mars Surveys, Inc.; and J. Reckner Associates, Inc. t/a Reckner Holding Company; Reckner Associates; J. Reckner Associates Inc. d/b/a Blueberry; J. Reckner Associates Inc. d/b/a Reckner; and J.

4

Reckner Associates, Inc. d/b/a Reckner Health Care.  (Ex. 5 at Form IL-7041 (08/94), Named Insured Extension Schedule).

      20.     The 2015 Policy, 2016 Policy, and 2017 Policy each have limits of insurance under the Businessowners Coverage form of $1,000,000 for Liability and Medical Expenses and $3,000,000 for General Aggregate.  (Exs. 3–5, Form BP-7119 (04/10)).

      21.     The 2015 Policy, 2016 Policy, and 2017 Policy each have limits of insurance under the Commercial Umbrella Coverage form for $10,000,000 per occurrence and $10,000,000 in the aggregate.  (Exs. 3–5, Form CX-0003 (01/99)).

## I.    THE BUSINESSOWNERS COVERAGE FORM

      22.     The Liability Insuring Agreement in the Businessowners Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy provides:

> **SECTION II – LIABILITY**
>
> **A. Coverages**
>
>    **1. Business Liability**
>
>       **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result.  But:
>
>         (1) The amount we will pay for damages is limited as described in Paragraph **D. – Liability And Medical Expenses Limits Of Insurance** in **SECTION II – LIABILITY**; and
>
>         (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of

judgments or settlements or medical expenses.

...

**b.** This insurance applies:

    **(1)** To "bodily injury" and "property damage" only if:

        **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

    ...

    **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

(Exs. 3–5, Form BP 00 03 01 10, Insuring Agreement, § II.A.1., pp. 31–32).

    23.    The Businessowners Coverage Form defines "property damage" in the 2015 Policy, 2016 Policy, and 2017 Policy as follows:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(*Id.* at Form BP 00 03 01 10, Liability And Medical Expenses Definitions, § II.F.17., p. 45).

24.     The Businessowners Coverage Form defines "occurrence" in the 2015 Policy, 2016 Policy, and 2017 Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at Form BP 00 03 01 10, Liability And Medical Expenses Definitions, § II.F.13., p. 45).

25.     The Businessowners Coverage Form defines "personal and advertising injury" in the 2015 Policy, 2016 Policy, and 2017 Policy as:

> ... injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> ...
>
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy[.]

(*Id.* at Form BP 00 03 01 10, Liability And Medical Expenses Definitions, § II.F.14., p. 45).

26.     The Businessowners Coverage Form in the 2015 Policy, 2016 Policy, and 2017 Policy does not provide coverage for "'property damage' expected or intended from the standpoint of the insured. ...". (*Id.* at Form BP 00 03 01 10, Exclusions, § II.B.1.a., p. 33).

27.     Coverage under the Businessowners Coverage Form in the 2015 Policy, 2016 Policy, and 2017 Policy is modified by the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion. This exclusion provides that there is no coverage for:

> "Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law ...

(*Id.* at Form BP 00 03 01 10, Exclusions, § II.B.1.s., p. 39).

28.     The Businessowners Coverage Form in the 2015 Policy, 2016 Policy, and 2017 Policy includes the Knowing Violation of Rights Exclusion, which provides that there is no

4838-6563-9799.1

coverage for "'[p]ersonal and advertising injury': (1) caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'". (*Id.* at Form BP 00 03 01 10, Exclusions, § II.B.1.p.(1), p. 37).

29.     The Businessowners Coverage Form in the 2015 Policy, 2016 Policy, and 2017 Policy includes the Material Published Prior to Policy Exclusion, which provides that there is no coverage for "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (*Id.* at Form 00 03 01 10, Exclusions, § II.B.1.p.(3), p. 38).

30.     The Businessowners Coverage Form in the 2015 Policy, 2016 Policy, and 2017 Policy includes the following anti-stacking provision:

> **Two or More Policies Issued By Us**
>
> Regardless of the Limits of Insurance shown in the Declarations of this policy, if any named insured shown in the Declarations covered by this policy is also covered under any other policy issued by us or any company affiliated with us, then:
>
> **1.** The most we will pay for all such "bodily injury" or "property damage" and medical expenses arising out of any one "occurrence" will be the highest applicable Limit of Insurance under any one policy; and
>
> **2.** The most we will pay for all such "personal and advertising injury" arising out of any one offense will be the highest applicable Limit of Insurance under any one policy; and
>
> **3.** If this policy does not represent the highest applicable Limit of Insurance for "bodily injury", "property damage" or "personal and advertising injury", then the insurance provided by this policy does not apply.
>
> All other terms of the policy remain the same.

(Form BP 80 30 04 10; MerchantsPro Two or More Policies Issued by Us Anti Stacking Endorsement).

4838-6563-9799.1

## II.     THE UMBRELLA COVERAGE FORM

31.     The Insuring Agreement in the Umbrella Coverage Form of the 2015 Policy, 2016

Policy, and 2017 Policy provides:

> **SECTION I — COVERAGES**
> **A. Insuring Agreement**
> 1. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend…

(*Id.* at Form CXL 4 04 03, Insuring Agreement, § I.A.1., p. 1).

32.     The Umbrella Coverage Form of the 2015 Policy, 2016 Policy, and 2017 Policy

includes the following definitions for terms used in the Insuring Agreement:

> 12. "Occurrence" means:
> a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions that result in "bodily injury" or "property damage". All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "Occurrence".
> b. An offense that results in "personal and advertising injury". This does not include an offense committed with actual malice. All damages that arise from the same general conditions shall be deemed to arise from one "Occurrence". All damages involving the same injurious act, regardless of the frequency, repetition or the number or kind of media used, or the number of claimants shall be deemed to arise

from one "occurrence".

13. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

...

    **d.** Oral or written publication in any manner of material that violates a person's right of privacy; or

...

17. "Property damage" means:
    **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. ...

18. "Retained limit" means the greater of:
    **a.** The total of the limits as shown in the Declarations for the coverage(s) in question, and the limits of any other insurance not shown in the declarations that is valid and collectible; or
    **b.** The limit shown in the Declarations as the "self-retained limit".
However, "retained limit" does not mean any "sub-limit".

...

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

...

23. "Ultimate net loss" means the total of the following sums for each "occurrence" to which this policy applies:
    **a.** All sums for which the insured becomes legally obligated to

4838-6563-9799.1

pay as damages, either by reason of adjudication or settlement or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.. [sic] This includes deduction for recoveries and salvages paid or to be paid.

   **b.** All expenses, other than defense settlement expenses provided in **Section I – Coverages, C. Supplementary Payments** incurred by or on behalf of the insured in the investigation, negotiation, settlement and defense of any "suit" seeking damages under this policy. However, the salaries of the insured's regular employees are excluded.

   **24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the section titled Schedule of Underlying Insurance and Limits."

(*Id.* at Form CXL 4 04 03, Definitions, § V., pp. 13–17).

33.    The Umbrella Coverage Form of the 2015 Policy identifies the following as insureds in addition to the Named Insureds:

**SECTION II – WHO IS AN INSURED**

**A.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":

   …

   **7.** Any organization you newly acquire or form other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier; and

   **b.** Coverage is applicable only in excess of the limits of "underlying insurance", and you must add the organization to your "underlying insurance" as soon as practicable, advising us of the addition. We may then adjust the premium charges.

   **c.** Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the

4838-6563-9799.1

organization; and

> **d.** Coverage does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

(Ex. 3 at Form CXL 4 04 03, Who Is An Insured, § II.A., pp. 7–9).

34.   The Umbrella Coverage Form of the 2015 Policy, 2016 Policy, and 2017 Policy includes the following exclusions from coverage:

> **B. Exclusions**
>
> This insurance does not apply to:
>
> …
>
> **7. Expected or Intended Injury**
>
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. …
>
> …
>
> **14. Personal And Advertising Injury**
>
> > **a. Knowing Violation Of Rights Of Another**
> >
> > > "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
> >
> > …
> >
> > **c. Material Published Prior To Policy Period**
> >
> > > "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period. All "personal and advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded.

(Exs. 3–5, Form CXL 4 04 03, Exclusions, § I.B.14., p. 4).

35.   The Umbrella Coverage Form of the 2015 Policy, 2016 Policy, and 2017 Policy is

modified by endorsement to include the Exclusion – Violation of Statutes that Govern E-mails,

Fax, Phone Calls or Other Methods of Sending Material or Information, which provides:

> **A.** The following is added as an exclusion under **SECTION I –
> COVERAGES, B. Exclusions**
>
> This insurance does not apply to:
>
> **DISTRIBUTION OF MATERIAL IN VIOLATION OF
> STATUTES**
>
> "Bodily injury", "property damage" or "personal and advertising
> injury" arising directly or indirectly out of any action or
> omission that violates or is alleged to violate:
>
> **a.** The Telephone Consumer Protection Act (TCPA), including any amendment
> of or addition to such law …

(*Id.* at Form CXL 413 03 05).

## COUNT I:  DECLARATORY JUDGMENT (PRIMARY COVERAGE)

36.     SICA incorporates by reference Paragraphs 1-35 as though fully set forth herein.

37.     There is no coverage of any kind for Reckner before March 30, 2015 because the

"Reckner Healthcare" entity did not exist, and therefore, was not an insured under any SICA policy

before the 2015 Policy at the earliest.

38.     There is no coverage for Reckner under the Businessowners Coverage form of any

of the policies at issue for the alleged damages because of increased labor to deal with the allegedly

unsolicited faxes because these are non-covered, pure economic losses.

39.     There is no coverage for Reckner under the Businessowners Coverage form of any

of the policies at issue for the request for injunctive relief because injunctive relief is not "bodily

injury," "property damage," and/or "personal and advertising injury."

40.     There is no coverage for Reckner for "property damage" and/or "personal and

advertising injury" under the Businessowners Coverage form of the 2015 Policy and 2016 Policy

because there are no allegations of any faxes being sent before January 2017.

41.     There is no coverage for Reckner for "property damage" under the Businessowners Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because the allegations that the unsolicited faxes tied up the fax machine, caused undue wear and tear, and used the paper and toner were not the result of accidental conduct but were Reckner's "knowing," "willful," "improper[]," and "unlawful[]" acts and omissions.

42.     There is no coverage for Reckner for "property damage" under the Businessowners Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because the allegations that the unsolicited faxes tied up the fax machine, caused undue wear and tear, and used the paper and toner were caused by excluded intentional acts in that Reckner intended to send the allegedly unsolicited faxes and knew that sending them would damage Claimant.

43.     There is no coverage for Reckner for "personal and advertising injury" under the Businessowners Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because the faxes are not an invasion of privacy in that they do not disclose secrets about the Claimant or any other alleged recipient.

44.     There is no coverage for Reckner for "personal and advertising injury" under the Businessowners Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because of the Knowing Violation of Rights Exclusion.  The Underlying Lawsuit alleges that Reckner sent faxes without having been solicited for them or having obtained permission to send them beforehand, which allegedly caused damage to Claimant.

45.     Even if there were "personal and advertising injury" coverage, which SICA denies, the Material Published Prior to Policy Exclusion would limit any such coverage to the policy period in which the first publication of the fax took place.

46.     SICA has no duty to defend or indemnify Reckner in the Underlying Lawsuit because of the absence of any potential for coverage under any of the policies at issue.

47.     For all of the foregoing reasons, an actual controversy exists between SICA, Reckner, and Claimant, which vests in the Court the power to declare the rights and liabilities of the parties.

## COUNT II:  DECLARATORY JUDGMENT (UMBRELLA COVERAGE)

48.     SICA incorporates by reference Paragraphs 1-47 as though fully set forth herein.

49.     There is no umbrella liability coverage available because the umbrella liability coverage does not drop down to become primary coverage where coverage is excluded under the primary liability coverage form.

50.     There is no umbrella liability coverage of any kind for Reckner before March 30, 2015 because the "Reckner Healthcare" entity did not exist, and therefore, was not an insured under any SICA policy before the 2015 Policy at the earliest.

51.     Even if there were umbrella liability coverage of any kind for Reckner under the 2015 Policy, which SICA denies, any such coverage would cease 90 days after March 30, 2015 because Reckner was not added as a Named Insured.

52.     There is no coverage for Reckner under the Umbrella Coverage form of any of the policies at issue for the alleged damages because of increased labor to deal with the allegedly unsolicited faxes because these are non-covered, pure economic losses.

53.     There is no coverage for Reckner under the Umbrella Coverage form of any of the policies at issue for the request for injunctive relief because injunctive relief is not "bodily injury," "property damage," and/or "personal and advertising injury."

54.     There is no coverage for Reckner for "property damage" and/or "personal and

15

advertising injury" under the Umbrella Coverage form of the 2015 Policy and 2016 Policy because there are no allegations of any faxes being sent before January 2017.

55.     There is no coverage for Reckner for "property damage" under the Umbrella Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because the allegations that the unsolicited faxes tied up the fax machine, caused undue wear and tear, and used the paper and toner were not the result of accidental conduct but were Reckner's "knowing," "willful," "improper[]," and "unlawful[]" acts and omissions.

56.     There is no coverage for Reckner for "property damage" under the Umbrella Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because the allegations that the unsolicited faxes tied up the fax machine, caused undue wear and tear, and used the paper and toner were caused by excluded intentional acts in that Reckner intended to send the allegedly unsolicited faxes and knew that sending them would damage Claimant.

57.     There is no coverage for Reckner for "personal and advertising injury" under the Umbrella Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because the faxes are not an invasion of privacy in that they do not disclose secrets about the Claimant or any other alleged recipient.

58.     There is no coverage for Reckner for "personal and advertising injury" under the Umbrella Coverage form of the 2015 Policy, 2016 Policy, and 2017 Policy because of the Knowing Violation of Rights Exclusion.  The Underlying Lawsuit alleges that Reckner sent faxes without having been solicited for them or having obtained permission to send them beforehand, which allegedly caused damage to Claimant.

59.     Even if there were "personal and advertising injury" coverage, which SICA denies, the Material Published Prior to Policy Exclusion would limit any such coverage to the policy

period in which the first publication of the fax took place.

60.     SICA has no duty to defend or indemnify Reckner in the Underlying Lawsuit because of the absence of any potential for coverage under any of the policies at issue.

61.     For all of the foregoing reasons, an actual controversy exists between SICA, Reckner, and Claimant, which vests in the Court the power to declare the rights and liabilities of the parties.

**WHEREFORE**, Plaintiff Selective Insurance Company of America respectfully prays for judgment against Defendant J. Reckner Associates, Inc. d/b/a Reckner Healthcare, including:

A.     A declaration that there is no duty to defend or indemnify under 2015 Policy, 2016 Policy, and/or 2017 Policy because there is no covered claim arising from the Underlying Lawsuit; and

B.     The provision of such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Michael T. McDonnell, III
Michael T. McDonnell, III
Kutak Rock LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103
(215) 299-4384 (Telephone)
michael.mcdonnell@kutakrock.com
**ATTORNEYS FOR DEFENDANT
SELECTIVE INSURANCE COMPANY
OF AMERICA**

4838-6563-9799.1