# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SELECTIVE INSURANCE COMPANY OF AMERICA,**<br><br>*Plaintiff,*<br><br>v.<br><br>**J. RECKNER ASSOCIATES, INC. d/b/a RECKNER HEALTHCARE,**<br><br>*Defendant.* | Case No. 2:18-cv-04450-JDW |

## MEMORANDUM

A lawsuit in the Eastern District of Michigan accuses J. Reckner Associates, Inc. of sending faxes in violation of the Telephone Consumer Protection Act and of converting the property of fax recipients. Reckner wants its insurer Selective Insurance Company of America to defend it (and maybe to indemnify it). Selective only covers Reckner for unintentional harms. Because Reckner did not send the faxes unintentionally, Selective's policy does not cover Reckner. The Court will therefore grant Selective's summary judgment motion.

## I. BACKGROUND

### A. The Insurance Policies

Selective has insured Reckner since 2001. Relevant here, for the policy year September 17, 2016, through September 16, 2017, Selective issued to Reckner an insurance policy (the "2017 Policy") that includes both Businessowners Coverage and Commercial Umbrella coverage. The 2017 Policy provides coverage for any "property damage" caused by an "occurrence," which the policy defines as "an accident, including continuous or related exposure to substantially the same general harmful conditions." (ECF No. 21-5 at 161-62, 175-76.) The Policy excludes coverage for

"'property damage' expected or intended from the standpoint of the insured." (*Id*. at 163.) In the 2011-2012 policy period, Selective added a provision to the policy which modifies it to exclude coverage for "'property damage' . . . arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . the Telephone Consumer Protection Act" ("TCPA Exclusion") (*Id*. at 168-69.) The TCPA Exclusion provision has been in every policy since 2011, including in the 2017 Policy. Reckner alleges that Selective never notified Reckner that the TCPA Exclusion was inserted into the 2017 Policy or any preceding policy period.

The 2017 Policy also includes coverage for "personal and advertising injury" that is "caused by an offense arising out of your business . . .." (*Id.* at 161.) The 2017 Policy defines "personal and advertising injury to include any "injury . . . arising out of one or more of the following offenses: (e) Oral or written publication, in any manner, of material that violates a person's right of privacy . . .." (*Id.* at 175.)

### B. The TCPA Action

In May 2017, Brian Lyngaas filed a putative class action (the "TCPA Action") against Reckner in the United States District Court for the Eastern District of Michigan. The complaint in the TCPA Action (the "TCPA Complaint") alleges that Reckner violated the TCPA by faxing unsolicited advertisements to Mr. Lyngaas and a class of similarly-situated persons with the assistance of a third-party fax broadcaster. The complaint also includes a count for conversion and requests that the Court award treble damages for Reckner's knowing and willful violation of the TCPA.

### C. Procedural History

On October 16, 2018, Selective brought this action seeking a declaratory judgment that the Policy does not require it to defend or indemnify Reckner in the TCPA Action. It filed an Amended

2

Complaint on July 18, 2019. Reckner filed a counterclaim asserting breach of contract and seeking a declaration of coverage. Both Parties now move for summary judgment.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). The filing of cross–motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted).

## III. ANALYSIS

### A. Property Damage

Under Pennsylvania law, an insurer has a duty to defend "whenever the complaint filed by the injured party may potentially come within the coverage of the policy." *Gedeon v. State Farm Mutual Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa 1963). "[A]n insurer's duty to defend and indemnify [is] determined solely from the language of the complaint against the insured," not from any facts

3

extrinsic to the complaint. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006).

An insured's intentional conduct does not constitute an "accident." *Nationwide Mut. Ins. Co. of Columbus v. Pipher*, 140 F.3d 222, 225–26 (3d Cir. 1998). Pennsylvania courts use a subjective standard to determine whether an insured intended an injury and must decide whether the insured "desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *United States Auto. Ass'n v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. Ct. 1986). "[T]he fact that the event causing the injury may be traceable to an intentional act of a third party does not preclude the occurrence from being an 'accident.'" *Mohn v. American Cas. Co. of Reading*, 326 A.2d 346, 348 (Pa. 1974). Rather, the insured must act with specific intent to cause the relevant harm, or harm of the same general type, in order for such conduct to fall outside the scope of an insurance policy which covers "accidents." *Elitzky*, 517 A.2d at 989.

Here, the TCPA Complaint asserts that Reckner's conduct was intentional. According to the Class Action complaint, Reckner "sent advertisements by facsimile to [plaintiffs] . . . with the assistance of a third-party fax broadcaster . . . that it hired." (ECF 21-1 ¶ 30.) Reckner contends that it is unclear whether the plaintiff in the TCPA Action in the underlying litigation believes that Reckner's conduct was intentional because the TCPA Complaint refers to the TCPA as a strict liability statute, which means Reckner would be liable "even if [its] actions were negligent." (ECF No. 21-1, ¶ 60.) However, that abstract possibility does not mean that the complaint in the TCPA Action charges Reckner with anything other than intentional conduct. No allegation in the TCPA Complaint charges Reckner with negligence or suggests that Reckner sent the fax by accident. On

the contrary, the TCPA Complaint asserts a claim for conversion and seeks treble damages, both of which require a willful or knowing violation.

The allegations in the TCPA Complaint fall outside the scope of coverage in the 2017 Policy. In particular, it does not allege an "occurrence" because it does not allege an accident; it alleges an intentional act on Reckner's part.

Even if this Court agreed that the Class Action alleges that Reckner acted negligently, it still would not mean that any resulting damages constitute an accident. Rather, the key inquiry as to whether damages resulted from an accident is whether it was "caused by an event so unexpected, undersigned and fortuitous as to qualify as accidental." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 293 (Pa. 2007). Here, the wear and tear caused that Reckner's transmission of faxes caused was a reasonably foreseeable result of its conduct. Reckner may not have intended to violate the TCPA, but it did intend to send faxes, and it knew that those faxes would be delivered through each recipient's fax machine. Reckner also knows that the use of a fax machine will contribute to its gradual "wear and tear" in much the same way that it will deplete paper and toner. *See Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc.*, 551 F. App'x 638, 641 (3d Cir. 2014); *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 406 (3d Cir. 2016); *Melrose Hotel Co. v. St. Paul Fire and Marine Insurance Co.*, 432 F.Supp.2d 488 (E.D. Pa. 2006), aff'd, 503 F.3d 339 (3d Cir. 2007).

Reckner points out that parts of the 2017 Policy include wear-and-tear exclusions, but the definition of "occurrence" does not. That argument misses the point. The issue is that in this instance the "wear and tear" was obviously foreseeable, not that "wear and tear" could never constitute an occurrence. It would be unreasonable to expect Selective to list out as part of its

definition of occurrence every possible type of damage that could result from intentional or foreseeable conduct. Accordingly, Selective is not required to defend Reckner in the TCPA Action.

The Parties also dispute the TCPA Exclusion provision and whether Selective provided notice of its inclusion in the Policy. The Court is skeptical of the argument that Reckner did not have notice of the provision given that it was included in every policy between 2011 and 2017. Nevertheless, because the Court has already determined that there is no covered "property damage" claim and that Selective is not required defend Reckner, the Court need not address the TCPA Exclusion issue.

### B. Advertising Injury

The 2017 Policy provides coverage for "personal and advertising injury caused by an offense arising out of your business . . . ." (ECF No. 21-5 at § II.A.1.) The 2017 Policy defines "personal and advertising injury" as "injury . . . arising out of one or more of the following offenses . . . (e) Oral or written publication, in any manner, of material that violates a person's right of privacy . . . ." (*Id.* at § II.F.14.) Selective argues in its summary judgment motion that none of the claims in the TCPA Complaint is a personal and advertising injury. Reckner Associates does not respond to that argument. The Court can therefore treat it as conceded. *See Provident Bank v. Antonucci*, Civ. No. 12-cv-07133(KM), 2014 WL 7051781, at * 8 (D.N.J. Dec. 12, 2014); *Seals v. City of Lancaster*, 553 F. Supp.2d 427, 432-33 (E.D. Pa. 2008). In any event, the 2017 Policy's definition of personal and advertising injury only protects the privacy right to secrecy, not to seclusion. *See Stevens & Ricci*, 835 F.3d at 407-08. It therefore does not extend to sending unsolicited faxes. *See id.*

## IV. CONCLUSION

The claims in the TCPA Action all arise from Reckner's intentional conduct. They also do not allege an advertising injury, as Reckner appears to concede. Therefore, the 2017 Policy does not provide Reckner with any coverage for the TCPA Action. The Court will therefore grant summary judgment in Selective's favor. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: March 30, 2020